Monroe Turner, *alias* M. B. Turner v. The State.

No. 22970. Delivered December 13, 1944.

The opinion states the case.

Chas. H. Dean, of Plainview, for appellant.

Ernest E. Goens, State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for forgery, punishment assessed being two years in the penitentiary.

This is the second appeal. The opinion on the first will be found in 176 S. W. (2d) 327.

Appellant was charged with forging a check for $125.00, drawn on the Hale County State Bank, payable to the order of M. B. Turner, and purportedly signed by C. M. Wilson. The check was dated "3-9-1943," and was endorsed on the back "M. B. Turner."

C. M. Wilson was appellant's grandfather. The check in question was returned to Mr. Wilson in his statement from the bank. He reported the matter to the bank, claiming the check was not signed by him. Upon this trial he so testified, and further testified that he had authorized no one to execute said check. On cross examination he testified: "I have known Monroe all of his life. He has worked for me. He worked for me a whole lot, I don't know how much. I have received letters from him when he was away from me, several of them. As to whether I am familiar with his writing, I learned him how to write. I learned him how to write his name. I am looking at that endorsement on that check. I do know his handwriting when I see it. In my opinion that is not his handwriting on that check."

Upon this trial appellant testified that he "did not write that check or the endorsement," thus bringing into application Art. 731 C. C. P. in view of the other evidence in the record.

No one in the bank knew who had presented the check for payment, and none of the employees claimed to have seen appellant in or about the bank at the time the check was presented.

Mr. Curry, who had been for many years in the banking business, although Chief of Police of Plainview at the time of the trial, testified as follows: "I know the handwriting of Monroe Turner. I have had occasion in the past to study his handwriting. I have seen that particular check. As to whether or not in my opinion Monroe Turner wrote that check, the fill-in and the endorsement is characteristic in that writing of the characteristics of his writing. The characteristics in the fill-in of the check and the endorsement of the check are the same characteristics of his writing. When I say the fill-in of the check that is the payee, pay to the order of, and the endorsement is the endorsement on the back of the check. By the fill-in I mean that is where the check says pay to the order of, and the endorsement on the back. In my opinion he wrote the pay to the order of and the endorsement."

It will be noted that Mr. Curry does not undertake to say that the signature of C. M. Wilson on the check was in appellant's handwriting, but only the endorsement and the "fill-in" part of the check. Appellant was not charged with forging the endorsement, but with forging Wilson's signature.

Other evidence of the State attempting to show that appellant signed his grandfather's name to the check in question was from experts who testified from comparison of appellant's known writing to that on the alleged forged instrument.

Art. 731 C. C. P. provides: "It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Proof by comparison only shall not be sufficient to establish the handwriting of a witness who denies his signature under oath." It occurs to us that the State has fallen short of meeting the requirements of said article.

Appellant claimed that he was not in Plainview on the 9th of March—the date of the check—and among other witnesses to establish his claim of alibi he placed upon the witness stand his mother-in-law. Three bills of exception reflect that upon cross

examination State's counsel asked this witness if appellant had not married witness' daughter while the daughter was in jail. Objection to the qustion was promptly sustained and no answer was given. State's counsel then asked the witness "Where is the girl now?" meaning appellant's wife. Again prompt objection was sustained and the question was not answered. Despite the court's ruling State's counsel then asked the witness: "As a matter of fact, your daughter is in the penitentiary for murder?" Again objection was sustained and the question was not answered, but the form of the question got before the jury a matter foreign to the case on trial and its probable effect on the jury under the facts is too speculative to pass as harmless. The trial court realized this and said to State's counsel: " 'I sustained the objection and told you that you couldn't go into that, and I just don't want you to be guilty of asking that kind of question any more. You couldn't help but know that that was in violation and contrary to my ruling,' and, at request of counsel for the defendant, instructed the jury not to consider anything except the relationship between the witness and the defendant." The reprimand was merited, but we think the court should have gone further and granted appellant a new trial.

The judgment is reversed and the cause remanded.